1

2

3

4

5

6

7

8                            UNITED STATES DISTRICT COURT

9                           CENTRAL DISTRICT OF CALIFORNIA

10

11   JOYCE E. HAASE,                    )   Case No. EDCV 11-1902-JPR
                                        )
12                 Plaintiff,           )   MEMORANDUM OPINION AND ORDER
                                        )   AFFIRMING THE COMMISSIONER
13           v.                         )
                                        )
14   MICHAEL J. ASTRUE,                 )
     Commissioner of the Social         )
15   Security Administration,           )
                                        )
16                 Defendant.           )
     _____)
17

18   I.    PROCEEDINGS

19         Plaintiff seeks review of the Commissioner's final decision

20   denying her application for Social Security Disability Insurance

21   Benefits ("DIB").   The parties consented to the jurisdiction of

22   the undersigned U.S. Magistrate Judge pursuant to 28 U.S.C.

23   § 636(c).   This matter is before the Court on the parties' Joint

24   Stipulation, filed August 9, 2012.   The Court has taken the Joint

25   Stipulation under submission without oral argument.   For the

26   reasons stated below, the Commissioner's decision is affirmed and

27   this action is dismissed.

28

## II.   BACKGROUND

Plaintiff was born on August 10, 1959.  (Administrative Record ("AR") 84.)  She has a high school education and is able to communicate in English.  (AR 149, 159.)  She claims to have been disabled since December 2, 2000, because of neurofibromatosis type 2 – a rare disease that causes tumors to grow on the central nervous system – which has resulted in complete hearing loss in her left ear and progressive hearing loss in the right.  (AR 150.)

On January 31, 2008, Plaintiff filed her application for DIB.  (AR 84-85.)  After it was denied, she requested a hearing before an Administrative Law Judge ("ALJ"), which was held on May 26, 2010.  (AR 33.)  Plaintiff, who was represented by counsel, testified at the hearing; medical expert Dr. Ross Eliott Lipton and vocational expert ("VE") Jose L. Chaparro also testified. (AR 31-83.)

On September 22, 2010, the ALJ denied Plaintiff's claim. She first found that Plaintiff last met the insured status requirements of the Social Security Act on June 30, 2005, and did not engage in substantial gainful activity from the alleged onset date of December 2, 2000, to that date.  (AR 13.)  She then determined that Plaintiff had the severe impairments of "neurofibromatosis type 2 (NF2) with hearing loss."  (Id.)  She found, however, that as of June 30, 2005, Plaintiff retained the residual functional capacity ("RFC")[1] to perform "light

---

[1] RFC is what a claimant can still do despite existing exertional and nonexertional limitations.  20 C.F.R. § 416.945(a); see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5

exertional level work" with the additional limitations that Plaintiff

> could occasionally climb ramps and stairs, should never balance or climb ladders, ropes, or scaffolds, should not walk on uneven terrain, lacked any other postural limitations if these activities were performed in well lit areas and in the presence of others, should avoid even moderate exposure to temperature extremes, should avoid immersion in water, should avoid concentrated exposure to vibrations and fumes, should avoid areas with noise above the noise level of a typical normal quiet office, should not drive a motor vehicle, and should avoid all exposure to moving machinery and unprotected heights.

(AR 16.)  She agreed with the VE that Plaintiff was capable of performing the jobs of "office helper" and "paper-pattern folder" and that those jobs existed in significant numbers in the national and regional economy; thus, the ALJ found Plaintiff not disabled.  (AR 20-21.)

On November 1, 2010, Plaintiff requested review by the Appeals Council.  (AR 6-7.)  On August 26, 2011, the Council denied Plaintiff's request for review.  (AR 1-3.)  This action followed.

**III. STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The Commissioner's

_____

(9th Cir. 1989).

1    or ALJ's findings and decision should be upheld if they are free
2    of legal error and are supported by substantial evidence based on
3    the record as a whole.  § 405(g); Richardson v. Perales, 402 U.S.
4    389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971); Parra v.
5    Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence
6    means such evidence as a reasonable person might accept as
7    adequate to support a conclusion.  Richardson, 402 U.S. at 401;
8    Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  It
9    is more than a scintilla but less than a preponderance.
10   Lingenfelter, 504 F.3d at 1035.  To determine whether substantial
11   evidence supports a finding, the reviewing court "must review the
12   administrative record as a whole, weighing both the evidence that
13   supports and the evidence that detracts from the Commissioner's
14   conclusion."  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir.
15   1996).  "If the evidence can reasonably support either affirming
16   or reversing," the reviewing court "may not substitute its
17   judgment" for that of the Commissioner.  Id. at 720-21.

18   **IV.   THE EVALUATION OF DISABILITY**

19        People are "disabled" for purposes of receiving Social
20   Security benefits if they are unable to engage in any substantial
21   gainful activity because of a physical or mental impairment that
22   is expected to result in death or which has lasted, or is
23   expected to last, for a continuous period of at least 12 months.
24   42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257
25   (9th Cir. 1992).

26        A.   The Five-Step Evaluation Process

27        The Commissioner (or ALJ) follows a five-step sequential
28   evaluation process in assessing whether a claimant is disabled.

4

20 C.F.R. § 404.1520(a)(4); <u>Lester v. Chater</u>, 81 F.3d 821, 828
n.5 (9th Cir. 1995) (as amended Apr. 9, 1996).  In the first
step, the Commissioner must determine whether the claimant is
currently engaged in substantial gainful activity; if so, the
claimant is not disabled and the claim is denied.
§ 404.1520(a)(4)(I).  If the claimant is not engaged in
substantial gainful activity, the second step requires the
Commissioner to determine whether the claimant has a "severe"
impairment or combination of impairments significantly limiting
her ability to do basic work activities; if not, a finding of
nondisability is made and the claim is denied.
§ 404.1520(a)(4)(ii).  If the claimant has a "severe" impairment
or combination of impairments, the third step requires the
Commissioner to determine whether the impairment or combination
of impairments meets or equals an impairment in the Listing of
Impairments ("Listing") set forth at 20 C.F.R. Part 404, Subpart
P, Appendix 1; if so, disability is established and benefits are
awarded.  § 404.1520(a)(4)(iii).  If the claimant's impairment or
combination of impairments does not meet or equal an impairment
in the Listing, the fourth step requires the Commissioner to
determine whether the claimant has sufficient RFC to perform her
past work; if so, the claimant is not disabled and the claim must
be denied.  § 404.1520(a)(4)(iv).  The claimant has the burden of
proving that she is unable to perform past relevant work.
<u>Drouin</u>, 966 F.2d at 1257.  If the claimant meets that burden, a
prima facie case of disability is established.  <u>Id.</u>  If that
happens or if the claimant has no past relevant work, the
Commissioner then bears the burden of establishing that the

claimant is not disabled because she can perform other
substantial gainful work in the economy.  § 404.1520(a)(4)(v).
That determination comprises the fifth and final step in the
sequential analysis.  <u>Id.</u>; <u>Lester</u>, 81 F.3d at 828 n.5; <u>Drouin</u>,
966 F.2d at 1257.

     B.   <u>The ALJ's Application of the Five-Step Process</u>

     At step one, the ALJ found that Plaintiff had not engaged in
any substantial gainful activity from the onset of her alleged
disability, December 2, 2000, to the date last insured, June 30,
2005.  (AR 13.)  At step two, the ALJ concluded that Plaintiff
had the severe impairments of "neurofibromatosis type 2 (NF2)
with hearing loss."  (<u>Id.</u>)  At step three, the ALJ found that
Plaintiff did not have an impairment or combination of
impairments that met or equaled any of the impairments in the
Listing.  (AR 15.)  At step four, the ALJ found that as of June
30, 2005, Plaintiff had the RFC to perform "light exertional
level work" with the additional limitations that Plaintiff

       could occasionally climb ramps and stairs, should never
       balance or climb ladders, ropes, or scaffolds, should not
       walk on uneven terrain, lacked any other postural
       limitations if these activities were performed in well
       lit areas and in the presence of others, should avoid
       even moderate exposure to temperature extremes, should
       avoid immersion in water, should avoid concentrated
       exposure to vibrations and fumes, <u>should avoid areas with</u>
       <u>noise above the noise level of a typical normal quiet</u>
       <u>office</u>, should not drive a motor vehicle, and should
       avoid all exposure to moving machinery and unprotected

1  heights.

2  (AR 16 (emphasis added).)  The ALJ concluded that Plaintiff was

3  unable to perform her past relevant work as a purchasing agent.

4  (AR 18.)  At step five, the ALJ found, based on the VE's

5  testimony and application of the Medical-Vocational Guidelines,

6  that jobs existed in significant numbers in the national and

7  regional economy that Plaintiff could perform.  (AR 19-20.)  The

8  ALJ disagreed with the VE that Plaintiff could perform the job of

9  "cafeteria attendant" "because the environment of a cafeteria

10  would likely be too noisy for an individual with the auditory

11  challenges faced by an individual such as [Plaintiff]," but she

12  agreed with the VE that Plaintiff could perform the work of

13  "office helper" and "paper-pattern folder."  (AR 20.)

14  Accordingly, the ALJ determined that Plaintiff was not disabled.

15  (AR 20-21.)

16  **V.   DISCUSSION**

17       Plaintiff alleges that the ALJ erred in (1) questioning the

18  VE and (2) relying on the VE's testimony.  (J. Stip. at 5.)  She

19  does not challenge any of the ALJ's findings at steps one through

20  four.

21       A.   The ALJ Properly Questioned the Vocational Expert

22       Plaintiff asserts that the ALJ improperly failed to include

23  the limitation against working in an environment "with noise

24  above the noise level of a typical normal quiet office" in her

25  hypothetical to the VE.  (J. Stip. at 7.)  Although her argument

26  is not clear, Plaintiff appears to assert that when the ALJ found

27  that she was "limited to a quiet work environment of a typical or

28  normal office, that finding necessarily precluded work that

7

required exposure to moderate levels of noise"; further, although the DOT describes office work as a "moderate" or "level 3" noise level, that description was formulated in the days when noisy typewriters were commonly found in offices, whereas an office today lacks typewriters and is more accurately described as a "quiet environment of noise level 2." (J. Stip. at 7-8.) Because the "office helper" and "paper-pattern folder" jobs require exposure to "moderate noise," Plaintiff argues, it is not clear that she is capable of performing them given her limitation against noise above the noise level of a "typical quiet office," and the ALJ should have questioned the VE about the discrepancy. (J. Stip. at 8-9.)

### 1. Applicable law

At step five of the five-step process, the Commissioner has the burden to demonstrate that the claimant can perform some work that exists in "significant numbers" in the national or regional economy, taking into account the claimant's RFC, age, education, and work experience. Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999); 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1560(c). The Commissioner may satisfy that burden either through the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2. Tackett, 180 F.3d at 1100-01; see also Hill v. Astrue, No. 10-35879, ___ F.3d ___, 2012 WL 3185576, at *7 (9th Cir. Aug. 7, 2012) ("The ALJ may meet his burden at step five by asking a vocational expert a hypothetical question based on medical assumptions supported by substantial evidence in the record and reflecting all the claimant's limitations, both

physical and mental, supported by the record."). "If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993).

    2.  Relevant facts

At the hearing, the ALJ first questioned Dr. Lipton, the medical expert, about Plaintiff's limitations.  Based on his review of Plaintiff's medical records, Dr. Lipton testified that Plaintiff's functional limitations included a limitation on exposure to noise.  (AR 52.)  Specifically, he testified that Plaintiff should "avoid all exposure to noise with vigilance, to try to preserve whatever hearing . . . is there." (Id.)  The ALJ clarified that Plaintiff "should avoid all exposure to noise . . . like a factory situation and things like that, because that could adversely affect what little hearing [Plaintiff] had or . . . make the hearing [Plaintiff] had in [her] right ear deteriorate faster." (AR 53.)  Neither Plaintiff nor her attorney (or Dr. Lipton, for that matter) objected to the ALJ's characterization of the expert's noise limitation as referring only to the type of noise "in a factory situation." (See id.)

The ALJ then posed a hypothetical to the VE regarding a person who "has no exertional limitations" but, based on Dr. Lipton's testimony, had the following RFC:

        [S]uch a person should avoid all hazards that depend
        upon attention, concentration or hearing.  The specific
        limitations   would   be   never   climbing   ladders   and

9

scaffolds; never balancing; occasionally stairs and
ramps; and the – and occasionally, on the other
posturals, and – but those, the climbing stairs and ramps
and the other posturals would only be in situations where
it was well lit, there were other people around and there
was an ability for Ms. Haase to provide – catch herself
or to provide, you know, stability, if necessary.  She
would not – should not have a job that depends on
hearing, so answering a phone would be out; responding to
requests and commands that were oral in nature, so a help
desk in a department store wouldn't work.

Environmentally she should avoid even moderate
exposure to extreme cold or extreme heat; should not be
in a situation where she would be immersed in water;
should never be around noise; avoid concentrated
vibrations and fumes and should not have a position where
she would be required to drive or operate machinery.
(AR 64-65 (emphasis added).)  The VE responded that based on that
hypothetical, Plaintiff could do the jobs of "cafeteria
attendant," "office helper," and "paper-pattern folder."  (AR 67-
69.)  The ALJ then asked for clarification regarding the noise
level of the cafeteria-attendant job.  (AR 71.)  The VE
responded:

[O]ne of the definitions is noise intensity level
and that is 3 and noise 3, I can tell you what that – how
they define that, 3 is moderate as in a business office
where typewriters are used, department store, grocery
store, light traffic, fast food restaurant at off hours.

1      That's how it's defined.  And, and I do agree with that
2      assessment.  The next level above that, just, just for,
3      for kicks here is, would be loud, which is a can
4      manufacturing department, large earth-moving equipment
5      and heavy traffic.  As I'm understanding the
6      hypothetical, that's the kind of noise intensity that's
7      to be avoided, as I understand it.

8 (Id.)  Plaintiff did not interject or object in any way that the

9 VE's understanding was erroneous.  The ALJ clarified that "under

10 the Dictionary of Occupational Titles, they say the noise in a

11 cafeteria, as they describe this job, is the same as in an office

12 where there would be typewriters being used, so that it meets the

13 . . . parameters."  (AR 71-72.)

14     In her written opinion, the ALJ found that Plaintiff had the

15 RFC to perform "light" work with several limitations, including

16 the limitation that Plaintiff "should avoid areas with noise

17 above the noise level of a typical normal quiet office."  (AR

18 16.)  She agreed with the VE that Plaintiff could perform the

19 jobs of "office helper" and "paper-pattern folder," but she

20 disagreed that Plaintiff could perform the "cafeteria attendant"

21 job because "the environment of a cafeteria would likely be too

22 noisy for an individual with the auditory challenges faced by an

23 individual such as [Plaintiff]."  (AR 20.)

24        3.   Analysis

25     Based on the ALJ's hypothetical, the VE found that Plaintiff

26 was capable of performing the jobs of "cafeteria attendant,"

27 "office helper," and "paper-pattern folder."  (AR 67-69.)  Those

28 jobs are all categorized by the DOT as noise level three -

"moderate" noise.  <u>See</u> DOT 311.677-010, 1991 WL 672694 (cafeteria attendant); DOT 239.567-010, 1991 WL 672232 (office helper); DOT 794.687-034, 1991 WL 681322 (paper-pattern folder).  The DOT does not define noise level three, but it is defined in the U.S. Department of Labor's <u>Revised Handbook for Analyzing Jobs</u> as "moderate" noise such as that found in a "business office where typewriters are used; department store; grocery store; light traffic; fast food restaurant at off-hours."  <u>See</u> U.S. Dep't of Labor, <u>Revised Handbook for Analyzing Jobs</u> ("RHAJ") 12-10 (1991).

The ALJ's hypothetical to the VE was consistent with Plaintiff's limitations as reflected by the medical evidence of record.  The medical evidence showed that as of June 30, 2005, Plaintiff had only moderate hearing loss in her right ear and could still hear out of that ear.  (AR 15, 47-48, 331 (stating that Plaintiff's surgery in March 2005 "has stabilized her hearing for the present"), 345 (March 2005 progress report stating that Plaintiff's right ear has "still very serviceable hearing"), 347 (audiogram dated September 19, 2002, showing normal hearing in right ear), 392-94 (December 11, 2001 letter from surgeon describing Plaintiff's hearing loss and noting that "she has some fullness in the right ear but maintains normal hearing on that side").)  Dr. Lipton testified that Plaintiff should "avoid all exposure to noise" but did not object to the ALJ's clarification that that statement meant "like a factory situation and things like that" as opposed to moderate noise levels like those found in a business office where typewriters are used.  (AR 52-53.)  That finding is consistent with the medical evidence, and Plaintiff has not pointed to any medical

12

opinions or other evidence suggesting that in early 2005 she had
an RFC capable of tolerating only less than moderate noise
levels.  The ALJ's ultimate finding that Plaintiff had the RFC to
perform the "office helper" and "paper-pattern folder" jobs is
consistent with both her hypothetical and the VE's response, as
well as the medical evidence of record.  (See AR 71-72 (using
RHAJ definition of "moderate" noise), 331, 345, 347, 392-94.)

Plaintiff claims that because those jobs involve noise
levels such as those found in a "business office where
typewriters are used," the ALJ's finding that she could perform
them conflicts with her ultimate finding that Plaintiff could
tolerate only the noise levels found in "a typical normal quiet
office" (AR 16).  According to Plaintiff, because typewriters are
no longer typically used in an office setting, a "typical normal
quiet office" is more akin to level two, or "light," noise.[2]  But
the fact that typewriters are no longer typically used in an
office setting does not render the hypothetical invalid.  Both
the ALJ and the VE were clear that Plaintiff had the RFC to
perform a job with moderate noise level, such as that made by
typewriters, regardless of whether she would actually encounter a
typewriter in the workplace.  To the extent that "a typical,
normal quiet office" suggests Plaintiff can tolerate only
something less than moderate noise, it is a misstatement because
it is not consistent with the rest of the ALJ's opinion, the

---

[2] The RHAJ defines "light" noise as that found in a
"library; many private offices; funeral reception; golf course;
[and] art museum."  See U.S. Dep't of Labor, Revised Handbook for
Analyzing Jobs 12-10 (1991).

hypothetical posed to the VE, or the medical evidence.  To the extent the ALJ erred in making that statement, however, the error was harmless because that finding was not determinative and the ALJ's analysis and additional findings throughout the rest of her opinion were consistent with the medical evidence and the VE's testimony.  <u>See</u> <u>Stout v. Comm'r</u>, 454 F.3d 1050, 1055 (9th Cir. 2006) (nonprejudicial or irrelevant mistakes harmless); <u>Lee v. Astrue</u>, 472 F. App'x 553, 555 (9th Cir. 2012) (ALJ's failure to include claimant's personality disorder as "severe" impairment at step two harmless when ALJ later accounted for impairment at step four); <u>Wright v. Comm'r of Soc. Sec.</u>, 386 F. App'x 105, 109 (3d Cir. 2010) (Tashima, J., sitting by designation) (ALJ's misstatements in written decision harmless error when regardless of them "ALJ gave an adequate explanation supported by substantial evidence in the record"); <u>Castel v. Comm'r of Soc. Sec.</u>, 355 F. App'x 260, 265-66 (11th Cir. 2009) (ALJ's erroneous reference to wrong medical reports harmless when he referred to reports "in two sentences" but "dedicate[d] two paragraphs" to correct reports, and decision conformed to medical evidence); <u>Taylor v. Astrue</u>, No. 4:07-CV-160-FL, 2009 WL 50156, at *10 (E.D.N.C. Jan. 7, 2009) (ALJ's misstatement of claimant's RFC in one sentence of decision "akin to a typographical error and constitutes harmless error" given that ALJ correctly stated RFC elsewhere in opinion and it was "overwhelmingly supported by substantial evidence").

Nor did the ALJ's finding that the cafeteria-attendant job required a noise level beyond Plaintiff's functional capacity imply that all jobs with noise level three were beyond

1  Plaintiff's capabilities.  The ALJ ultimately decided that the

2  cafeteria-attendant position would expose Plaintiff to noise

3  beyond "moderate" levels; she did not hold, as Plaintiff appears

4  to contend, that all jobs requiring "moderate" noise exposure

5  were beyond Plaintiff's RFC.  (See AR 20 (noting that "the

6  environment of a cafeteria would likely be too noisy for an

7  individual with the auditory challenges faced by" Plaintiff));

8  Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989) (court may

9  make reasonable inferences from ALJ's rationale and record).

10 Similarly, the ALJ's statement during the hearing that the noise

11 in a cafeteria is "the same as in an office where there would be

12 typewriters being used" (AR 71) does not imply that because she

13 found Plaintiff could not tolerate cafeteria noise, she

14 necessarily must have found that Plaintiff could not tolerate

15 typewriter noise.  Rather, during that portion of the hearing,

16 the ALJ was attempting to explain to Plaintiff that the DOT

17 classified both the cafeteria-attendant job and the office-helper

18 job as "moderate" noise level, which the ALJ explained "under the

19 [DOT] . . . is the same as in an office where there would be

20 typewriters being used," that is, noise level three.  (See AR

21 71.)

22      Because the ALJ's hypothetical to the VE properly reflected

23 Plaintiff's limitations consistent with the medical evidence of

24 record, the VE's testimony was sufficient evidence to support the

25 ALJ's finding that Plaintiff could perform the "office helper"

26 and "paper-pattern folder" jobs.  Reversal therefore is not

27 warranted on that basis.

28

                                  15

B.   <u>The ALJ Properly Relied on the Vocational Expert's</u>
<u>Testimony</u>

Plaintiff next contends that the VE's testimony deviated
from the DOT because the ALJ included in the hypothetical a
limitation that Plaintiff "should not have a job that depends on
hearing," but hearing is a "bona fide occupational qualification
as designated by the classificatory data contained in the DOT"
for the "office helper" job.  (J. Stip. at 18-19.)  Thus,
according to Plaintiff, because the VE did not explain the
alleged deviation from the DOT, his testimony did not provide
substantial evidence for the ALJ's finding that Plaintiff was
capable of performing the "office helper" job.  (<u>Id.</u>)  As to the
"paper-pattern folder" job, Plaintiff argues that she cannot
perform that job because it does not exist in significant numbers
in the regional or national economy.  (J. Stip. at 19-20.)

1.   <u>The VE's testimony did not deviate from the DOT</u>

An ALJ must ask a hypothetical question to a VE that is
based on medical assumptions supported by substantial evidence in
the record and that reflects all of the plaintiff's limitations.
<u>Roberts v. Shalala</u>, 66 F.3d 179, 184 (9th Cir. 1995).  When a VE
provides evidence about the requirements of a job, the ALJ has a
responsibility to ask about "any possible conflict" between that
evidence and the DOT.  <u>See</u> SSR 00-4p, 2000 WL 1898704, at *4;
<u>Massachi v. Astrue</u>, 486 F.3d 1149, 1152-54 (9th Cir. 2007)
(holding that application of SSR 00-4p is mandatory).  An ALJ's
failure to do so is procedural error, although the error is
harmless if no actual conflict exists or the VE provided
sufficient evidence to support the conclusion.  <u>Id.</u> at 1154 n.19.

16

Here, no conflict existed between the VE's testimony and the DOT, and thus the ALJ did not err in failing to inquire about a conflict.  The VE testified that Plaintiff had the RFC to perform the jobs of "cafeteria attendant," "office helper," and "paper-pattern folder," all of which entail exposure to "moderate" noise.  As discussed above, the ability to tolerate exposure to "moderate" noise was within Plaintiff's RFC in 2005, and the ALJ's hypothetical was consistent with that limitation. Moreover, the ALJ clarified to the VE that Plaintiff was not barred from all jobs that required hearing but only from those that "depended on" hearing.  (AR 67.)  The DOT does not state that the "office helper," "cafeteria attendant," or "paper-pattern folder" job is dependent on hearing.  See DOT 239.567-010, 1991 WL 672232 (office helper: describing need for hearing as "occasionally - Exists up to 1/3 of the time"); DOT 311.677-010, 1991 WL 672694 (cafeteria attendant: same); DOT 794.687-034, 1991 WL 681322 (paper-pattern folder: describing need for hearing as "Not Present - Activity or condition does not exist").  Thus, there was no conflict between the VE's testimony and the DOT.

Further, to the extent any conflict existed between the DOT job descriptions and the VE's testimony with respect to whether the jobs "depended on" hearing ability, the VE sufficiently explained it.  The VE clarified that the "cafeteria attendant" job was unlike a waitress position in that it did not require Plaintiff to listen to or speak to customers, and the office helper position did not require answering phones.  (AR 71, 74.) Reversal is therefore not warranted on this basis.

17

2.   The "paper-pattern folder" job exists in
significant numbers in the national economy

The Ninth Circuit has "never set out a bright-line rule for
what constitutes a 'significant number' of jobs." Beltran v.
Astrue, 676 F.3d 1203, 1206 (9th Cir. 2012).  The Ninth Circuit
has held, however, that 1266 jobs regionally is a "significant
number," see id. (citing Barker v. Sec'y of Health & Human
Servs., 882 F.2d 1474, 1479 (9th Cir. 1989)), and 64,000
nationally is a "significant number," see Moncada v. Chater, 60
F.3d 521, 524 (9th Cir. 1995) (2300 jobs regionally and 64,000
nationally significant numbers).  See also Albidrez v. Astrue,
504 F. Supp. 2d 814, 824 (C.D. Cal. 2007) (17,382 jobs nationally
is a "significant number").  A mere 135 regional jobs and 1680
national ones, however, are "very rare" numbers and thus not
"significant" within the meaning of the Social Security Act.
See Beltran, 676 F.3d at 1206.  If the number of jobs available
either regionally or nationally is "significant," the ALJ's
decision must be upheld.  See 42 U.S.C. § 423(d)(2)(A); Beltran,
676 F.3d at 1206.

The VE testified that 13,000 "paper-pattern folder" jobs
existed nationally and 1800 in California.  (AR 69-70.)[3]  These
numbers are akin to the numbers the Ninth Circuit has found
sufficiently "significant" to satisfy the Social Security Act,
see Beltran, 676 F.3d at 1206 (collecting cases), and far from
the small numbers, for example, 135 jobs regionally and 1680 jobs

---

[3] Plaintiff has not submitted any evidence showing that the
number of paper-pattern folder jobs available in the regional or
national economy is less than what the VE claimed.

18

nationally, see id., that it has found insufficient.  Plaintiff argues that 1800 jobs in California is not "sufficient" because the analysis must focus on the availability of jobs in Plaintiff's region rather than the state of California as a whole (J. Stip. at 19), but even if that were so, 13,000 jobs nationally is a "significant" number and thus the ALJ's decision must be upheld.   See Albidrez, 504 F. Supp. 2d at 824 (17,382 jobs nationally is "significant number"); Johnson v. Chater, 108 F.3d 178, 181 (8th Cir. 1997) (10,000 jobs nationally is "significant number"); Vining v. Astrue, 720 F. Supp. 2d 126, 128 (D. Me. 2010) (10,000 to 11,000 jobs nationally is "significant number); 42 U.S.C. § 423(d)(2)(a); Beltran, 676 F.3d at 1206.

Plaintiff admits that no conflict existed between the DOT's job description and the VE's testimony with respect to the "paper-pattern folder" position. (See J. Stip. at 19.)  Thus, even if the ALJ erred in finding that Plaintiff was capable of performing the "office helper" job, that error was harmless because she did not err in finding Plaintiff capable of performing the "paper-pattern folder" job, which exists in significant numbers in the national economy; the ALJ's decision must therefore be upheld.

**VI.   CONCLUSION**

Consistent with the foregoing and pursuant to sentence four of 42 U.S.C. § 405(g),[4] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice.   IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.

DATED: August 27, 2012

_____
JEAN ROSENBLUTH
U.S. Magistrate Judge

---

[4] This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

20